STATE OF HAWAII, Plaintiff-Appellee, *v.* ABEL SIMEONA LUI, also known as Able S. Lui and Bobo, Defendant-Appellant

NO. 6672

NOVEMBER 21, 1979

RICHARDSON, C.J., OGATA AND MENOR, JJ., AND RETIRED JUSTICE MARUMOTO AND CIRCUIT JUDGE LUM ASSIGNED BY REASON OF VACANCIES

*Per Curiam.* Appellant, Abel Simeona Lui, charged with murder for the shooting death of Don Anthony Gomes, was convicted by a jury of manslaughter[1] on April 11, 1977.

Appellant claimed self-defense under our statutory scheme of justification.[2] From his conviction, he appeals.

On July 7, 1976, several hours before the homicide, at the end of a fist fight between the parties, appellant claimed deceased threatened him: "I'm going to blow your f——— head."

---

[1] HRS § 707-702 defines manslaughter as follows:

§ 707-702 Manslaughter. (1) A person commits the offense of manslaughter if:

(a) He recklessly causes the death of another person; or

(b) He intentionally causes another person to commit suicide.

(2) In a prosecution for murder it is a defense, which reduces the offense to manslaughter, that the defendant was, at the time he caused the death of the other person, under the influence of extreme mental or emotional disturbance for which there is a reasonable explanation. The reasonableness of the explanation shall be determined from the view-point of a person in the defendant's situation under the circumstances as he believed them to be.

(3) Manslaughter is a class B felony.

[2] HRS § 703-301 reads in part:

§ 703-301 Justification a defense; civil remedies unaffected. (1) In any prosecution for an offense, justification . . . is a defense.

HRS § 703-304 reads in part:

§ 703-304 Use of force in self-protection. (1) . . . the use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by the other person on the present occasion.

(2) The use of deadly force is justifiable under this section if the actor believes that deadly force is necessary to protect himself against death, serious bodily injury, kidnapping, rape, or forcible sodomy.

· · · ·

(5) The use of deadly force is not justifiable under this section if:

(a) The actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(b) The actor knows that he can avoid the necessity of using such force with complete safety by retreating . . . .

HRS § 703-300(4) reads in part:

"Deadly force" means force which the actor uses with the intent of causing or which he knows to create a substantial risk of causing death or serious bodily harm. . . .

Following the fight, appellant went to his mother's home, armed himself with a handgun and returned to the scene of the fight.

While talking to a friend who was in a parked automobile, appellant observed deceased approaching his direction from the opposite side of the street. He then disengaged his conversation, headed toward deceased and shot him while approximately 10 feet away. Appellant testified he thought deceased was reaching for a gun. Deceased was in fact unarmed.

The trial court did not admit into evidence: (1) testimony of appellant that he knew, at the time of the homicide, that deceased had beaten and raped a 13-year-old girl; (2) testimony of the police officer who arrested deceased for the rape and who personally interviewed the complainant; and (3) deceased's conviction record of assault in the third degree, criminal property damage in the third degree and driving under the influence of intoxicating liquor.

Appellant now claims he was denied his right to present evidence when the court refused to admit character evidence on specific acts of prior violence committed by deceased.

## I. ADMISSIBILITY OF DECEASED'S PRIOR VIOLENT ACTS

Under common law, a defendant who claims self-defense to a charge of homicide is permitted to introduce evidence of the deceased's violent or aggressive character either to demonstrate the reasonableness of his apprehension of immediate danger or to show that the decedent was the aggressor, *State v. Jacoby*, 260 N.W.2d 828 (Iowa 1977), *Annot.*, 1 A.L.R. 3d 571 (1965). And, where character evidence is offered to show the reasonableness of the defendant's apprehension, he must lay a foundation, prior to the admission of the evidence, that he knew at the time of the homicide of the deceased's reputation or of the specific acts of violence committed. This foundation is required because the evidence is probative of the defendant's state of mind, showing his belief or corroborating his knowledge as to the deceased's character and tending to

prove that he acted as a reasonably prudent person would under similar beliefs and circumstances. *See, Ibid, McMorris v. State,* 58 Wis.2d 144, 205 N.W.2d 559 (1973). *Accord, Territory v. Aquino,* 43 Haw. 347 (1959). But, the foundation is not required where the factual issue is to determine the aggressor. *State v. Jacoby, supra.* Proof of the deceased's violent and turbulent character in this situation is circumstantial evidence of the likelihood of his being the aggressor and of the absence of provocation on the part of the defendant.

Although Hawaii's laws on justification supersede the common law defense of self-defense, nevertheless, the common law rules on character evidence are applicable.

Deceased's conviction record was properly excluded. Absent the required foundation that appellant knew of each of the specific events[3] of the conviction at the time of the homicide, it was inadmissible as proof of the reasonableness of his belief that deadly force was immediately necessary. Appellant's testimony as to his knowledge of all three acts was limited to a single statement that he knew of assaults in Waikiki.[4] Without a more complete connection between appellant's knowledge of the assaults and the conviction record, the foundation was inadequate to justify admission.

The trial court also properly excluded the proffered evidence to show by circumstantial proof that the deceased was the aggressor in the fatal incident.

The record does not support a factual dispute as to who was the aggressor. The State did not seek to establish the applicability of § 703-304 by showing that the appellant "with intent to cause death or serious bodily injury, provoked the use of force against himself."

---

[3] We are assuming here that the appellant would have been able to show that drunk driving is an aggressive or violent act.

[4] Transcript p. 310:
Q. What else did you know about Don Gomes? What did you know about Don Gomes?
A. I knew he had some assaults in Waikiki . . . .

Where the details of the fatal encounter are free from doubt, a defendant cannot bootstrap into evidence the character of deceased to serve improperly as an excuse for the killing under the pretext of evidencing deceased's aggression. *See Dempsey v. State*, 266 S. W.2d 875, 159 Tex. Cr. 602 (Crim. App. Tex. 1954); 1 Wigmore, Evidence, Sec. 3 (3d ed. 1940).

Evidence as to the rape and beating could have been admitted as bearing on appellant's state of mind, but such admission rests in the sound discretion of the trial court. *McAllister v. State*, 74 Wis.2d 246, 246 N.W.2d 511 (1976). The trial court was required to weigh the probative value of this evidence against the prejudicial impact on the minds of the jurors. Not only was the rape incident remotely connected to the circumstances of this case, there was no foundation as to when it happened. We find no abuse of discretion here.

## II. DISCLOSURE OF DECEASED'S ARREST RECORDS

Before trial, appellant moved for disclosure of deceased's arrest records in order to secure names of witnesses who could be called to testify as to deceased's character for violence and aggression. The trial court denied this motion and a subsequent request for an *in camera* inspection of the records.

Appellant now contends that the court's action constituted judicial suppression of exculpatory evidence; and the prosecutor's failure to provide these records *sua sponte* constituted a violation of his affirmative duty to provide favorable evidence under *Brady v. Maryland*, 373 U.S. 83 (1963).

Once the defense makes a pretrial *Brady* motion, the duty to determine the merits of the request for disclosure falls solely on the court. *See People v. Andre W.*, 44 N.Y.2d 179, 375 N.E.2d 758, 761 (1978). *U.S. v. Agurs*, 427 U.S. 97, 106 (1976), encourages "submitting the problem (of disclosure) to the trial judge." We find no merit in appellant's contention that the prosecutor's duty to disclose continues despite determination by the court.

Applying the standards set in *Brady* and *Agurs* to the present case, the ultimate question to be decided is whether appellant was denied a fair trial because the trial court suppressed materials favorable to his claim of self-defense.

For reasons previously expressed in this opinion, we hold that none of the testimonies of witnesses in the arrest records to show that deceased acted in conformity with a known character trait were admissible during trial, either as corroboration of appellant's state of mind or to show that deceased was the aggressor. Consequently, there was no favorable evidence constitutionally required to be disclosed.

We find no error, constitutional or otherwise, in any of the trial court's determination.

Other issues raised on appeal are without merit.

Judgment affirmed.

*Renee M. L. Yuen,* Deputy Public Defender (*Raymond E. Gurczynski,* Deputy Public Defender, with her on the brief) for defendant-appellant.

*Arthur Ross,* Deputy Prosecuting Attorney (*Keith M. Kaneshiro,* Deputy Prosecuting Attorney, on the brief) for plaintiff-appellee.